Good morning, your honors. My name is Catherine Donahoe of the Office of the State Appellate Defender on behalf of Jesse Cox. Good morning. Good morning, your honors. My name is Assistant State's Attorney Gavin Quinn on behalf of the people. All right, good morning to both of you. Each of you will have approximately 15 minutes for your argument, and Ms. Donahoe, you may save out some time for rebuttal. All right. Yes, your honors, I would like to save a few minutes for rebuttal. All right. Jesse Cox was found guilty by a jury of aggravated unlawful use of a weapon based on the additional fact that he did not have a validly issued FOID card. This was a summer night in 2014. He was standing in front of his stepsister's house about to go home. Let me just stop you for a minute. Did he have a valid FOID card? The only evidence we have as to that fact is an affidavit that the state presented at the time. Okay. But the state's evidence did tend to show that he had a gun in the pocket of his shorts, and that when he saw a police car, he ran off and he threw the gun. But that fact alone, the possession of the gun was not enough for him to be found guilty of aggravated unlawful use of a weapon. The state had to prove the absence of a FOID card. And this isn't one of those cases where the defendant said he didn't have one or anything like that, right? Jesse did testify at his trial. He was not asked about the FOID card and he didn't comment on that. He denied having possessed the gun. But I mean, the police officer didn't state that he had asked him about it at the time of the arrest, nothing like that. That's correct, Your Honor. There's no evidence of any efforts the police took on the day of his arrest to ascertain his FOID card status. That request came after his arrest by virtue of a request from the Cook County State's Attorney's Office to the Illinois State Police asking Debbie Claypool, an administrative assistant, to provide a certification as to his FOID card status. That was the only evidence. And under Diggins, this decision from another division of this court, it's been recognized that that is a violation of the Confrontation Clause as set out in Crawford v. Washington and Melendez-Diaz v. Massachusetts. But how about the Invited Error Doctrine? Well, Invited Error Doctrine does not apply here because this was evidence that the state was seeking to admit, not that the defense was seeking to admit. Now, the state has tried to argue that because the defense attorney said no objection when the trial judge asked if there was an objection, that this was similar to the Invited Error Doctrine in that the defense agreed to this admission of this evidence. However... Didn't he agree to it like three different times? Pardon me? Didn't the defense attorney on three occasions, wasn't he asked on three occasions whether he objected to the introduction of the testimony once when they first, you know, entered it? The second time when they asked to admit it, and maybe, I don't know, the third time in a closed case, I'm not sure, but weren't there three different occasions when the judge specifically asked the lawyer, do you have any objection to the introduction of this evidence? Based on my recollection of the record, at the conclusion of the state's case, the state asked to admit this certification. The defense attorney did not make any comment. The trial judge asked if there was an objection, and the defense attorney said no objection, and the issue was not revisited again until the state did argue in its closing that they had established that there was no Floyd card. What if the record would show that there were three separate occasions? Would they matter? If the record would show that there were three separate occasions where the defense attorney was asked for an objection, I don't think that that would make a difference because just the fact that he said no objection versus remaining silent should not make a difference in this case. Well, isn't it kind of like acquiescence? I mean, if he had objected, then in this case, couldn't the state have said, well, we'll ask for a continuous judge so we can bring in this woman so she can testify about the same facts? Well, I have a couple of responses to that, and first of all, the fact that we're trying to make a distinction here between saying no objection and remaining silent, and just because the judge asked the defense attorney if she had an objection, it wasn't that she would, that was the only reason she had an opportunity to object. She had an opportunity to object whether or not the trial judge specifically asked her, and she wasn't asked, do you object based on confrontation clause grounds because you don't have an opportunity to cross-examine this witness today, and has the state shown whether or not she's unavailable? It wasn't that specific. So we've argued that this can be reviewed as plain error, but also as ineffective assistance of counsel. Now, this trial took place before Diggins, but Crawford was from 2004. Melendez-Diaz was from 2009. This is well-settled law on the confrontation clause that the trial attorney should have been aware of. She should have objected. In this case, wasn't the defense really wholly unrelated to a void card? It was basically that the defendant here never possessed the gun? Wasn't that the theory, the strategy, the trial defense? That's correct. That was the emphasis of the defense. This was a jury trial. The defense attorney was trying to poke holes in all the evidence related to possession, lack of fingerprints, the fact that the gun was found on a nearby lot, not in the defendant's hands at the time of his arrest. Well, did he ever say in the closing argument or any other time in the trial that the defense come forth with any kind of an argument that there was a failure of proof on the void card aspect? Defense did not, and that was ineffective assistance of counsel, because that was not inconsistent to argue both no gun possession, no proof of the void card. Those are consistent arguments that should have both been presented to the jury, because those facts are equally important in establishing Jesse's guilt. Would your argument be different if there had been a stipulation at trial that he did not have a void card? A stipulation would resolve the confrontation cause issue by formally agreeing to what Debbie Claypool's testimony would have established. Isn't when you say three different times you're not objecting akin to a stipulation? Is it akin to a stipulation? I disagree, because of the fact that a stipulation is a formal agreement about what would have happened, what her testimony would have been, and anything that would have been established on cross-examination could be included in that stipulation. This is just an affidavit. It's testimonial hearsay. It's untested. Cross-examination is the principle means by which we test this. But the counsel, when you don't object, you are acknowledging that you're not. When you don't object to a document like this, a document or evidence, you're acknowledging in the express no objection that you're not going to be able to cross-examine. I mean, isn't it, in other words, you're really not going to challenge this part of the state's case? I mean, from a substantive matter, is that really any different than a stipulation? It's different because it shows a lack of consideration on the part of the defense attorney. She should have not allowed the state to have this shortcut to present an affidavit. Well, that may be under an ineffective assistance argument, but on the substantive argument, I mean, the state is saying you affirmatively waived this. You said it's okay. Let it all happen. We're not going to challenge it. I think that's giving the defense attorney too much credit because her actions here speak to an ignorance of the law, an ignorance to the Confrontation Clause concerns here more than they do to a considered decision, which could have been encapsulated in a stipulation or saying or specifically addressing the Confrontation Clause issue as happened with the objection in the Diggins case. That didn't happen here. In the Diggins case, there is one big difference, and that is in Diggins, the attorney actually did object. That's correct. And the defense there was different. Here, the defense was that he didn't even have this gun. Well, the defense at Diggins was also a lack of possession because Diggins testified that he did not have a Floyd card. So here, there was additional evidence of the absence of a Floyd card here. Here, all we have is this affidavit from Debbie Claypool, someone who never showed up in court. We know nothing about her. We know nothing about what the jury would have thought of her testimony, how she would have been able to answer questions about the records she looked at, were these paper records, computer-generated, or do we believe that she paid due attention to all of these details in generating this affidavit for the state and checking this information for the state for Jesse's prosecution? We don't know that here. Is there any claim this isn't a business record? Well, whether or not it's a business record is not the key issue. That's what I'm asking. You're not concessing it's a business record, but you're saying under Crawford, it still doesn't get to come in simply because it's a business record. That's correct. And she may or may not have reviewed business records kept in the ordinary course of business, but her affidavit may have been based on those records. Her affidavit was prepared for Jesse's prosecution just shortly after his arrest, specifically citing this date in July, just a month after his arrest, at the request of the prosecution. It was clearly created for the prosecution. If we accepted your theory, and we wrote it that way, it would give the bar the ability to play gamesmanship on this type of thing. A lawyer, he has a duty to object if he wants to keep evidence out. And here there was no objection. So it fits to me right under the category of an invited error. And when you talk about ineffective assistance, sure, if there was a void card, that would be ineffective assistance. But there's no showing that there was a void card here. There's no showing that there was a void card, but that was something that the State had to prove, the absence of a void card. And in this case, we know from looking at Diggins and we know from the settled law on the confrontation clause, if the attorney had objected, the State would have not been able to admit that affidavit. And Jesse would not have been found guilty. If the lawyer had objected, then the State could have asked to call the witness live, right? That's correct. And avoided this whole mess, so to speak. And that's exactly what should have happened here. Instead, we give the State this shortcut where they don't even take the additional time it would take to do a stipulation. If this is really accurate, and again, I believe this is untested evidence. But counsel, if you're the defense attorney, which I assume you were not the defense attorney at trial. No. You were the defense attorney, and you were in this situation, and you knew your client did not have a void card. You knew it. Maybe the judge didn't know it, maybe the prosecutor still had to prove it, but you knew it. What would be so ineffective, and I'm not saying that fact has been established here, but let's say it were. You knew your client didn't have a void card, and the State puts this evidence up, and you think to yourself, I've got two options. I can say that's fine, I don't object, or I can make it bring in a live witness who's going to testify competently that my client doesn't have a void card, and I'm not really going to have a cross-examination because he doesn't have a void card. So, in the grand scheme of things, it's really six one-half does and the other to just say no objection. What is unreasonable about a lawyer thinking that, if that factual print is true? I would hope that a defense attorney would not take that gamble with their client's liberty and criminal record and actually try to test the evidence in the trial court as it's intended instead of crossing their fingers that there would be some better chance on appeal. I would hope that. And also, considering again that this is a jury trial, the fact that this witness would have come in and testified to the business records, she could have been questioned extensively by the defense attorney in ways similar. You know, we see a lot of bench trials. There's no fingerprint evidence on the gun. A trial judge doesn't care. They know it's not common practice. But she went after that in front of the jury because the jury thinks, where are the fingerprint? Where's the fingerprint evidence? And the same type of cross-examination could have happened in this case. Instead of just ignoring one of the two essential things that needed to be proven, instead of only focusing on the gun position, there was this whole other area to explore that the jury was essentially not asked to consider because of defense counsel's actions. Do you have anything further at this time? No, we would just ask Your Honors to reverse the conviction and remand for a new trial. Thank you. We'll give you some time for rebuttal. Mr. Quinn. Good morning. Good morning. Good morning, Your Honors. May it please the Court. My name is Assistant State's Attorney Gavin Quinn on behalf of the people of the State of Illinois. We're asking this Court to affirm defendant's conviction for aggravated, unlawful use of a weapon. Under Issue 1, we made three different arguments that recognize that our second and third arguments aren't as strong as our first, including the plain error view and the no error business record exception. So I don't want to delay to those points what's beyond in the brief. What I do want to focus on, though, is the first argument, that the defendant affirmatively acquiesced to the admission of the foreign evidence when defense counsel stated there was no objection. How many times did he do that? Your Honor, I've moved from my recollection to the record just once at the close of the State's case. And when this did happen, the State produces affidavit to enter in the evidence, and the judge asks defense counsel, is there any objection? And defense counsel responded, there is not, Judge. And in the Illinois Supreme Court and this Court, in many cases, found when a party procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, that party cannot contest the admission on appeal. And that's where we are today. The defendant here, the defense counsel, affirmatively acquiesced to this issue. They gave notice to the State and to the Court when they said no objection that this was not an avenue they were pursuing in their trial strategy. And it shows in their trial strategy. Throughout the whole case, they focused on identity and possession, and that's the types of questions they asked. And then in closing argument, made that same argument again. Counsel, if the defense attorney had objected and the trial court had overruled the objection and allowed the document in, would that have been reversible error? In this case, I'm sorry, say that one more time. If the defense attorney had objected, but the trial judge said, overruled, going to allow it, would that have been reversible error? It would certainly be a Crawford issue that if they made an objection and the court found and overruled the objection and allowed it in without allowing them the ability to confront or cross the witness, it would certainly be an issue. But in this case, that's not what happened. Here, the judge indicated to defense counsel, do you have an objection to this affidavit coming in? And they said, there is no objection. And again, the spook in their response saying there is no objection is acquiescence. And that's what we have here. And furthermore, talking about presenting a new theory on appeal, this is similar argument that, again, at the trial, it was possession identity, possession identity. That's what they were pushing. And ultimately, the jury found that that wasn't good enough and that he was guilty of this. There's no forfeiture when the argument is essentially one of proof, is there? I mean, the argument is that the state didn't establish one of the elements of this charge, which is that he did not possess a void card. So it's really a sufficiency of the evidence, which is not waived because it wasn't raised specifically in the trial court. Isn't that correct? In this case, it was defense counsel affirmatively waived. And we do admit and agree that this is the only piece of evidence that proves that the defendant's void card status. But the defendant affirmatively acquiesced that. All right. So that's where you're saying it would be a waiver, a forfeiture, a procedural default. Because he affirmatively agreed to or he said, I don't object to it coming into evidence. Correct. As Janice has pointed out, that if defense counsel would have objected and said, I'm not okay with this, then the state would have done what they needed to do and either call them a live witness to testify to that evidence. Isn't that what they're doing now in light of Diggins? Aren't they calling these people now from the – what's that? The Illinois State Police. Yeah. Aren't they calling them now to address the Diggins issue? Yes. At the trial court, they're attempting to get agreements, situations, and if that doesn't work, they'll call someone from the Illinois State Police to come in and testify to this information. Which could have been done if there was an objection in this case. Correct. And in this case, the defendant affirmatively acquiesced. So the state didn't call them because the defendant gave notice to the state that this was not an avenue they were pursuing at the trial. And again, that shows through their strategy of approaching it as an identity possession issue. Which leads us into the ineffective assistance claim. Yeah, before you go into that, I just want to refresh your recollection. You said that there was only one instance where the court asked if there was any objection. I just want to read from the record to you to refresh your recollection. Assistant State's Attorney, Judge, we have no further live testimony. We would, however, seek to admit People's Exhibit No. 4, which is a certified letter from the Illinois State Police, and if I may go ahead and read this for the record and for the jury. The court, is there any objection? Assistant Public Defender, there is not, Judge. The court, go ahead. The Assistant State's Attorney then read the certification to the jury and asked the judge to admit it into evidence. Assistant State's Attorney and Judge, at this time, we ask to have People's Exhibit No. 1 through 4 admitted into evidence. I believe there already has been. The court, write. Any objection? No, Judge. So now, does that refresh your recollection? Yes, Judge. It was twice, wasn't it? Yes. And I apologize for overlooking that, and I think that even helps further my share of it. This was a strategic decision that they weren't attacking the Freud card evidence, and I think, as some of the others have suggested, as I personally could understand from this record, that the defendant didn't have a Freud card, so it was not really an issue to go after, which is why, as an attorney, they made the strategic decision to go for identity and possession. And I believe that with ineffective assistance, not only is the burden the defendant's, but there's also a presumption of competency, and I think, based on the information in this record and the defendant acquiescing to this and the strategy that the defense counsel chose in their sound defense strategy, shows that this was not a case of ineffective assistance. If there are no more questions, the people, the law, and the arguments presented today and those made in our briefs, and we ask the court to affirm the defendant's conviction for aggravated or unlawful use of the weapon and find that the defendant affirmatively acquiesced on this issue and, therefore, is not entitled to plain air review, and the defendant has failed to meet his burden in proving ineffective assistance. Thank you, Your Honors. Thank you. Ms. Donahoe. Your Honors, and to clarify the bulk of what's been to discuss today is ineffective assistance, but our position is also that this may be reviewed as plain error under first prong or second prong, and the State has stressed that they believe defense counsel affirmatively acquiesced to the admission of this evidence and, by saying no objection, gave notice to the State that they were not challenging this evidence, but, again, there is nothing on the record to show that this confrontation clause issue was considered. Your Honor has pointed out, reading from the transcript of pages J88 to 89, that there were three opportunities to object, but I would point out that that's happening over just a little over one page of the transcript, the discussion around admitting this, and the final one was with regards to admitting all of the State exhibits, including the photographs. It wasn't clearly pointed just to this issue. It was only very briefly addressed, and there is just no indication in the record that the defense attorney gave this issue consideration. And, as Your Honors have also pointed out, the State is correcting its trial practice. It's doing what it should have done in this case, and it's doing what it should have done in Jesse's case and in Diggins' case. Well, sure, but aren't they entering into stipulations as well? And they could have. Just like they do with lab reports. And, Your Honor, we would not be raising this issue if there were a stipulation, but there is a difference between a formal stipulation entered into evidence agreeing to the testimony what would have been established by Debbie Claypool's testimony and her affidavit that is completely untested. And, again, just with respect to trial strategy, this was not sound trial strategy. There is no reason to allow the State a shortcut for an essential element of the offense when it is entirely consistent with the defense you are already presenting. Counsel, you say there's a difference, but from a constitutional standpoint, the right to confront your witnesses, if you stipulate that a lab report says, you know, we'll say something, or that a State police agent will say something, whether it's a stipulation or whether you're just saying we have no objection, you're doing the same thing, right? You're giving up your right to cross-examine the witness for whatever reason you have, maybe because you know you can't cross-examine them, maybe because you've made a decision that it's not the best part of your case to argue, whatever. But substantively, constitutionally, it's the same thing, right? I know a stipulation is different than a failure to object or an expressed non-objection. But constitutionally, how is one different than the other? Because a stipulation is designed to be a formal agreement between the parties. But you're giving up your right to cross-examine. But it establishes what would have been established with the testimony, including cross-examination. So it's a considered decision by the defense attorney. This is what would have happened as a result of Debbie Claypool testifying, that she would have sat there for five minutes, gone over her business records and how she came about this. But that didn't happen in this case. There's just no indication whatsoever that the defense attorney thought this was just a driving abstract, comparable to a driving abstract or a proof or a certified copy of a prior conviction that's used when a defendant's felon status is used to establish this. Isn't there a Fourth District case that specifically says that failing to object to certain states' evidence has the similar effect of stipulating for that evidence? Well, I believe, yes. Probst is a case that the state cited in its brief. And that court found that it wasn't ineffective to fail to object. And the court really gave defense attorney a lot of deference on trial strategy in that case. And I think it's important to note that this was from 2003. Crawford was 2004. Melendez-Diaz, which is the case most clearly on point with this type of evidence, was 2009. So I do not think the Fourth District decision in Probst needs to control this court's decision. So in sum, we ask you to reverse Jesse's conviction. Thank you both. We will take this matter under advisement.